UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION


PERRY MICHAEL HEBERT            :      DOCKET NO.  2:12-cv-2487


VS.                            :      JUDGE MINALDI


U.S. COMMISSIONER OF SOCIAL     :      MAGISTRATE JUDGE KAY
SECURITY


<u>REPORT AND RECOMMENDATION</u>


Before the court is plaintiff's petition for review of the Commissioner's denial of Supplemental Security Income Benefits.  This matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

After review of the entire administrative record and the briefs filed by the parties, this court recommends that the Commissioner's decision should be AFFIRMED and this matter DISMISSED with prejudice.

PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on May 8, 2009, alleging disability beginning on April 10, 2004.  Tr. 96-98.  The claim was initially denied on August 13, 2009.  Tr. 54-57.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  Tr. 58.  Plaintiff who was represented by an attorney appeared at the hearing on September 29, 2010.  Tr. 27-52.  Following the hearing the ALJ issued an unfavorable decision dated November 19, 2010.  Tr. 12-23.  In her decision, the ALJ applied the five-step sequential evaluation process and determined that plaintiff was not disabled under the Social Security Act.  *Id.*  The ALJ found at Step 5 that considering plaintiff's age, education, work experience, and residual functional

-1-

capacity ("RFC") there are jobs that exist in significant number which plaintiff can perform.  Tr. 22.  Thus, the ALJ determined that plaintiff was not disabled.  *Id.*

Plaintiff filed a request for appellate review of this decision and on February 9, 2012, his request was denied.  Tr. 4-8.  On September 17, 2012, plaintiff filed suit in this court appealing the determinations of the Commissioner.  Doc. 1.

### FACTS AND MEDICAL EVIDENCE

*A.  Facts*

At the time of the hearing plaintiff was 49 years old.  Tr. 30.  He testified that he lives with his girlfriend and seven month old son.  Tr. 31.  Over the last fifteen years he has worked doing manual labor and cooking.  Tr. 32.  He spent ten years in prison for armed robbery beginning in in 1989, two and a half years for a parole violation in 2008, and two months for domestic violence in 2010.  Tr. 31-32.  He attended school through the eighth grade and does not have a GED.  Tr. 32.

Plaintiff testified that he has a bad back that causes him severe pain.  Tr. 33.  He stated that he cannot sit or stand for very long.  *Id.*  He stated that the muscles around his heart are not "good anymore" and that he has had a liver problem since 2000.  *Id.*  His face was reconstructed after an altercation and he testified that also causes him pain.  *Id.*  He cannot take the pain medication that he needs because of his liver problem.  *Id.*  Plaintiff stated that he can sit and stand for fifteen to twenty minutes and he can lift ten to fifteen pounds.  Tr. 38-39.  He also stated that he has anxiety problems.  Tr. 39.

On a typical day, plaintiff stated that he tries to "deal with this pain."  Tr. 35.  He testified that at times he cannot get out of the house.  *Id.*  His girlfriend does the cooking and washing.  Tr. 36.  He sometimes goes shopping, rarely visits family and friends and goes to church once or

twice a month.  *Id.*  The outside yard work is done by the maintenance crew where he lives.  *Id.*
He does not drive and stated that his hobby is reading the Bible.  Tr. 37.

### B.  Medical Evidence

#### 1.  Calcasieu Correctional Center

The medical evidence from the Calcasieu Correctional Center shows that in 2000 plaintiff
had complaints concerning his left knee and was treated at Lake Charles Memorial Hospital.  Tr.
155, 159.  In 2008 he complained of chronic heartburn and a bad rash.  Tr. 157, 160.

#### 2.  W.O. Moss Regional Medical Center

Plaintiff was seen on May 14, 2009,, in the emergency room for right lower back pain.
There was no numbness or weakness indicated.  *Id.*  He was prescribed Flexeril and Mobic.  *Id.*
An outpatient report dated August 25, 2009, notes hypertension and lower back pain.  Tr. 200.
The notes indicate that an x-ray revealed minimal spondylosis.  *Id.*  Testing on August 19, 2009,
was positive for Hepatitis B and C.  Tr. 202.  An untrasound of the liver dated September 15,
2009, was normal.  Tr. 199.

In March of 2010 plaintiff was seen at the outpatient clinic for follow up for hypertension
and high cholesterol.  Tr. 275, 277.  He complained of lower back pain, non-radiating.  *Id.*  He
was prescribed a brace for his back.  Tr. 278.  At an outpatient visit on April 14, 2010, plaintiff
was seen for follow up for Hepatitis C.   Tr. 272.  It was noted that this Hepatitis B problem had
cleared.  *Id.*  An EKG was scheduled.  *Id.*  On June 2, 2010, he presented for a follow up for
hypertension and high cholesterol.  Tr. 268.

A lumbar spinal scan dated June 10, 2010, revealed the lumbar vertebral bodies were
normally aligned, the discs were preserved, spurring was noted anteriorly, no fractures were
seen.  Tr. 266.  The impression from the scan was that plaintiff suffered from small anterior

spurs.  *Id.*   An ECG on the same date showed normal sinus rhythm, possible left atrial enlargement and left bundle branch block.  Tr.  267.  A chest x-ray on July 12, 2010, showed that the lungs and heart were normal.  Tr. 254.  No acute changes were seen.  *Id.*

### 3.  *Southwest Louisiana Center for Health Services*

Plaintiff complained of lower back pain at an appointment on December 8, 2009.  Tr. 204-05.  He reported difficulty standing, sitting and walking.  *Id.*  He was diagnosed with hypertension and low back pain and prescribed Tramadol.  *Id.*

### 4.  *Lake Charles Memorial Hospital*

On January 20, 2010, plaintiff was seen in the emergency room at Lake Charles Memorial Hospital.  Tr. 207-25.  He reported that he had been "pistol whipped" in his face and head during an altercation.  *Id.*  A CT scan of his head showed comminuted fractures of the right zygoma with zygomatic arch fracture and diastases of the posterior zygomatic temporal suture, fractures of the anterior and lateral walls of the right maxillary sinus with fractures extending into the right inferior orbital rim, orbital floor, and the lateral right orbital wall.  Tr. 224.  The right orbital wall fracture fragments displaced and distorted the lateral rectus muscle.  *Id.*

### 5.  *Earl K. Long Memorial Medical Center*

Plaintiff underwent facial reconstructive surgery at Earl K Long Memorial Medical Center on February 1, 2010.  Tr.  228, 235.  Following surgery it was noted that his visual acuity was good with no reported diplopia and no disturbance of vision.  Tr. 228.  He was discharged the next day and was seen for follow up on February 9, 2010.  *Id.*, 226.

### 6.  *Southern Medical Group, Inc., Johnny Segura, M.D.*

Dr. Segura performed a consultative examination on August 1, 2009.  Tr. 171-74. Plaintiff's complaints were lower back problems, headaches, anxiety, anger problems, and

trouble reading.  He reported that his back caused him constant pain which was previously relieved by taking Motrin but he reported that the Motrin no longer helped.  He stated that he has tried other medications for pain and muscle spasms but the pain persists.  He reported pain in his lower right flank that occasionally shoots down his right leg.  His fingers on his right hand occasionally get numb and tingly.  He has not seen any specialist for this problem.  He also reported problems with anxiety and frequent headaches.

Upon examination, Dr. Segura noted a well-developed male in no acute distress who was able to ambulate without assistance.  His heart had regular rhythm, no distalic murmur and all disal pulses were intact, full and equal.  No muscular atrophy or swelling was noted.  He was able to rise from a sitting position without assistance, stand on his tiptoes and heels, and tandem walk without problem.  He was able to squat and bend without difficulty.  His grip strength was 5/5 with adequate fine motor movement, dexterity, and ability to grasp objects bilaterally.  There was no edema, cyanosis or erythema noted.  His motor strength was a 5/5 bilaterally in all muscle groups.  His range of motion was normal in all joints.

Dr. Segura diagnosed progressively worsening lower back pain with muscle strain or possible disk disease.  He noted that the exam was normal but that plaintiff would benefit from regular doctor visits or physical therapy.  Dr. Segura opined that plaintiff can sit, walk, and/or stand for a full workday, lift/carry objects without limitations, hold a conversation, respond to questions, and carry out and remember instructions.

### 7.  *Judith Levy, Ph.D.*

Judith Levy, Ph.D. performed a psychiatric review technique on August 12, 2009.  Tr. 176-191.  She noted that although plaintiff alleged anxiety and anger problems he has never been treated by a physician or hospital for any mental condition and has never had any special

education or resource classes.  She further noted that the consultative examiner noted that plaintiff was oriented as to time, place and situation, did not appear depressed or anxious, and his memory was intact with good insight and cognitive function.  Dr. Levy determined that plaintiff did not suffer from any medically determinable mental impairment.

### 8. *Physical Residual Functional Capacity Assessment – Charlotte Lockhart*

A physical residual functional capacity assessment was completed on August 12, 2009. Tr. 191-98.  Plaintiff was limited to occasional lifting and/or carrying of 20 pounds and frequent lifting and/or carrying of 10 pounds, standing and/or walking for 6 hours in an 8-hour day, sitting for 6 hours in an 8-hour day, and unlimited pushing and/or pulling.  He was limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling.  Climbing of ladders, ropes and scaffolds was completely restricted.  No manipulative, visual, communicative or environmental restrictions were assessed.

## STANDARD OF REVIEW

"In Social Security disability cases, 42 U.S.C. § 405(g) governs the standard of review." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Frith v. Celebrezze*, 333 F.2d 557, 560 (5th Cir. 1964)).  The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error.  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting *Greenspan*, 38 F.3d at 236).  "It is 'more than a mere scintilla and less than a preponderance.'"  *Id.* (quoting *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)).  It is "such relevant evidence as a reasonable mind might accept to support a conclusion.  It must do

more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

In applying the substantial evidence standard, the reviewing court critically inspects the record to determine whether such evidence is present, "but may not reweigh the evidence or substitute its judgment for the Commissioner's." *Perez*, 415 F.3d at 461 (citing *Greenspan*, 38 F.3d at 236; *Masterson*, 309 F.3d at 272). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 272).

## LAW AND ANALYSIS

### A. *Burden of Proof*

The burden of proving that he or she suffers from a disability rests with the claimant. *Perez*, 415 F.3d at 461. The Social Security Administration defines a "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting at least twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ conducts a five-step sequential analysis to evaluate claims of disability, asking:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment[1]; (3) whether the claimant's

---

[1] A severe impairment or combination of impairments limits significantly a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). Basic work activities are defined at 20 C.F.R. § 404.1521(b). The term severe is given a *de minimis* definition as found in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). According to *Stone*, "[a]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." 752 F.2d at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)).

> impairment meets or equals the severity of an impairment listed in
> 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the
> impairment prevents the claimant from doing past relevant work
> (whether the claimant can return to his old job); and (5) whether
> the impairment prevents the claimant from doing any other work.

*Id.* (citing 20 C.F.R. § 404.1520).  If the claimant meets the burden of proof on the first four

steps, the burden shifts to the Commissioner on the fifth step to show that the claimant can

perform other substantial work in the national economy.  *Id.*  "Once the Commissioner makes

this showing, the burden shifts back to the claimant to rebut this finding."  *Id.* (quoting *Newton v.*

*Apfel*, 209 F.3d 448, 453 (5th Cir. 2000)).

       The analysis ends if the Commissioner can determine whether the claimant is disabled at

any step.  *Id.* (citing 20 C.F.R. § 404.1520(a)).  On the other hand, if the Commissioner cannot

make that determination, he proceeds to the next step.  *Id.*  Before proceeding from step three to

step four, the Commissioner assesses the claimant's residual functional capacity (RFC).  *Id.*

"The claimant's RFC assessment is a determination of the most the claimant can still do despite

his physical and mental limitations and is based on all relevant evidence in the claimant's

record."  *Id.* at 461-62 (citing 20 C.F.R. § 404.1545(a)(1)).  Specifically, in determining a

claimant's RFC, an ALJ must consider all symptoms, including pain, and the extent to which

these symptoms reasonably can be accepted as consistent with the objective medical evidence

and other evidence.  20 C.F.R. § 404.1529; Social Security Ruling 96-8p.  The ALJ must also

consider any medical opinions (statements from acceptable medical sources) that reflect

judgments about the nature and severity of impairments and resulting limitations.  20 C.F.R. §

404.1527, Social Security Rulings 96-2p, 96-6p.  The claimant's RFC is considered twice in the

---

If a severe impairment or combination of impairments is found at step two, the impairment or combined impact of
the impairments will be considered throughout the disability determination process.  20 C.F.R. §§ 404.1520,
404.1523.  A determination that an impairment or combination of impairments is not severe will result in a social
security determination that an individual is not disabled.  *Id.*

sequential analysis—at the fourth step it is used to determine if the claimant can still do his or her past relevant work, and at the fifth step the RFC is used to determine whether the claimant can adjust to any other type of work.  *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1520(e)).

Here, the ALJ found that plaintiff was not disabled at Step 5 of the sequential analysis. The ALJ found that based on testimony from a vocational expert, plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers which plaintiff can perform.

### B.  *Plaintiff's Claims*

In his appeal plaintiff argues that substantial evidence does not support the ALJ's decision.  Specifically, he sets forth the following arguments:

1. The ALJ posited a defective hypothetical question to the vocational expert; the expert's responses thereto cannot constitute substantial evidence upon which to base this step five denial.

2. The vocational expert's step five testimony regarding the presence of alternate jobs available to plaintiff contains legal error and, thus, is not supported by substantial evidence.

3. The ALJ failed to comply with the commissioner's binding ruling SSR 00-4p.

### 1.  Did the ALJ ask the vocational expert a defective question?

Plaintiff argues that the ALJ erred by failing to include any of plaintiff's severe impairments he recognized at Step 2 in his hypothetical question to the vocational expert ("VE"). Specifically, he contends that in order to reasonably incorporate all his disabilities the ALJ should have included "low back pain, Hepatitis B and C and hypertension" in his hypothetical question.  On this basis he maintains reversal is required.

The Commissioner maintains that the ALJ's question to the VE accounted for all of plaintiff's severe impairments by incorporating them into his RFC finding.  At Step 4 of the evaluation, the ALJ found that plaintiff was limited to unskilled light work with no climbing of

ladders, ropes and scaffolds and only occasional stooping, kneeling, crouching and crawling and no working in extreme temperatures.  The ALJ's hypothetical, the Commissioner argues, included all of these limitations and was a proper question which was supported by substantial evidence.

In *Bowling v. Shalala,* 36 F.3d 431 (5th Cir.1994), the Fifth Circuit determined that:

> Unless the hypothetical question posed to the vocational expert by the ALJ can be said to reasonably incorporate all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the questions), a determination of non-disability based on a such defective question cannot stand.

*Id.* at 436.

In this case, the ALJ asked the following questions of the VE:

> Q:      Assume for purposes of my next series of questions a hypothetical person of the same age, education, and vocational experience as the [plaintiff]; further assume that he could do light work, with no climbing of ladders, ropes, scaffold, occasional stooping, kneeling, crouching, crawling; he would not be able to work in temperature extremes.  Would he be able to return to any past relevant work?

> A:      No, ma'am.  It was at the medium, heavy, or very heavy levels.

> Q:      Okay. Would there be other jobs?

> A:      Yes, ma'am.

In determining that plaintiff maintained the RFC to perform light work with certain limitations, the ALJ weighed all the medical evidence and relied on the opinion of Dr. Johnny Segura whose examination revealed normal findings and Dr. Judith Levy who found no

medically determinable mental impairment.[2]  Tr. 21.  The ALJ further noted that the record did not contain any evidence from any physician which indicated that plaintiff suffered from any disability or limitation greater than that which he imposed.  *Id.*

Light work is defined as:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §404.1567(b).

Plaintiff contends that the ALJ's question was defective because it failed to include his severe impairments of "low back pain, Hepatitis B and C and hypertension."  Doc. 8, p. 4.  Here, the ALJ did not find plaintiff capable of performing a full range of light work.  Instead, he imposed the limitations of "no climbing of ladders, ropes, scaffold, occasional stooping, kneeling, crouching, crawling, and no working in temperature extremes."

We find that this limitation necessarily takes into account all of plaintiff's severe impairments recognized by the ALJ.  The second step of the sequential evaluation determines whether an impairment or combination of impairments is severe.  *See* 20 C.F.R. § 416.920.  Whether the impairments are "severe" is a separate and distinct step from assessing RFC, which is expressed as work-related functions.  *See id.*, 20 C.F.R. § 416.945.

A vocational expert is called to testify because of his familiarity with job requirements and working conditions.  *Fields v. Bowen,* 805 F.2d 1168, 1170 (5th Cir.1986).  "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation,

---

[2] The ALJ gave no weight to the physical residual functional capacity assessment conducted by Charlotte Lockhart because he determined that she was not a medical doctor.  Tr. 21.

including working conditions and the attributes and skills needed." *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir.1995), (citing *Fields*, 805 F.2d at 1170).  The vocational expert testifies on the basis of a claimant's "residual functional capacity and … age, education, and work experience" and testifies as to whether claimant "can make an adjustment to other work."  *See* 20 C.F.R. § 416.920(a)(4)(v).  A vocational expert is not expected to evaluate plaintiff's medical conditions as they have no medical training and this would be outside of their area of expertise.

We find that the hypothetical the ALJ asked in this case reasonably included all of plaintiff's limitations recognized by the ALJ and was correctly phrased in terms that the VE could properly respond to.  The RFC of light work with certain limitations reasonably incorporated all of plaintiff's limitations including his severe impairments.  Thus, we find the ALJ's hypothetical to be free from error.

We further note that if the ALJ's hypothetical omits a limitation "and the claimant or his representative is afforded the opportunity to correct deficiencies in the administrative law judge's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the administrative law judge's findings and disabilities recognized but omitted from the question)," there is no reversible error.  *See Bowling v. Shalala,* 36 F.3d 431, 436 (5th Cir.1994).  Here plaintiff was represented by an attorney at the hearing who was able to, and did in fact, cross examine the VE. Tr. 49-50.  The hypothetical that the ALJ posed to the VE faithfully incorporated all of the limitations recognized in his RFC assessment, which we find is supported by substantial evidence.  We find this argument lacks merit.

   **2. Did the vocational expert's step five testimony regarding the presence of alternate jobs available to plaintiff contain legal error?**
   **3. Did the ALJ fail to comply with the Social Security Ruling 00-4p?**

Plaintiff's next two assignments of error are related and will be addressed together.

First, plaintiff argues that the ALJ's finding at Step 5 is not supported by substantial evidence because the VE's testimony was in conflict with certain provisions of the *Dictionary of Occupational Titles* ("DOT").   Plaintiff contends that the VE's testimony that plaintiff could perform the job of equipment/vehicle cleaner contained legal error because that job is classified as semi-skilled in the DOT and the ALJ determined that plaintiff is unskilled because he has no transferrable skills.   He further submits that the job of hand packager requires a reasoning development level of 2 and is classified as a medium exertion level job in the DOT and plaintiff was limited to simple, light, unskilled jobs.   Finally, plaintiff submits that according to the DOT the job of machine feeder also requires a reasoning development level of 2 and that he cannot perform this job because he is limited to simple unskilled jobs.

Plaintiff also contends that the ALJ failed to comply with Social Security Ruling ("SSR") 00-4p because he failed to ask the VE whether any possible conflict existed between his testimony and the DOT and failed to elicit a reasonable explanation for any such conflict.

The Commissioner submits that the burden was on the plaintiff and his counsel to rebut or challenge the VE's testimony at the administrative hearing.   The Commissioner maintains that the Fifth Circuit case of *Carey v. Apfel,* 230 F.3d 131, 146 (5th Cir.2000), admonishes claimants who fail to confront the VE at the administrative hearing but instead "scan the record" for conflicts in the VE's testimony and the "voluminous provisions of the DOT" and then present those conflicts as reversible error.   The Commissioner contends, however, that even if the court were to exclude the first two jobs of equipment/vehicle cleaner and hand packager, plaintiff is nonetheless able to perform the job of machine feeder which the VE testified exists in significant

numbers in the national economy. Thus, the Commissioner submits that substantial evidence supports the ALJ's decision that plaintiff was not disabled.

The Commissioner further submits that the record reflects that the ALJ did comply with SSR 00-4p when he asked the VE if his opinion conflicted with information in the DOT and if so, to advise him of the conflict and the basis for his opinion.

In her opinion the ALJ found that plaintiff was capable of gainful employment because he could perform certain light unskilled jobs identified by the VE. Tr. 22. At the hearing the ALJ posed a hypothetical question to the VE incorporating plaintiff's RFC and asked if there were jobs that such a person could perform. The VE testified that such a person could return to work as (1) an equipment cleaner or vehicle cleaner, unskilled, light (71,000 positions nationally, 1,100 positions in Louisiana); (2) a hand packer or packager, unskilled, light (318,000 positions nationally, approximately 2,000 positions in Louisiana); and (3) a machine feeder, unskilled, light (42,000 positions nationally, 600 positions in Louisiana). Tr. 48-49. Plaintiff's attorney cross-examined the VE at the hearing adding several additional limitations to the ALJ's hypothetical. Tr. 49-50.

When there is a conflict between the VE's testimony and the DOT, the Fifth Circuit has adopted a "middle ground" approach which allows the ALJ to rely upon the VE testimony if the record reflects an adequate basis for deviating from the DOT. *Carey v. Apfel,* 230 F.3d 131, 146 (5th Cir.2000). The court in *Carey* stated that "neither the DOT nor the vocational expert testimony is per se controlling, [which] permits a more straightforward approach to the pertinent issue, which is whether there is substantial evidence supporting the Commissioner's determination that this particular person can do this particular job or group of jobs." *Id.* at 147. While the court noted that a VE's erroneous classification of the exertional level or skills

required for a particular job could call into question the reliability of such testimony, the court further stated:

> [C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.

*Id.* at 146-47.  As stated above, plaintiff contends that a conflict existed in the skill level of the job of equipment/vehicle cleaner, the exertional level and reasoning development level of the job of hand packager, and the reasoning development level of the job of machine feeder.  The court does recognize that a conflict existed between the VE's testimony and the DOT regarding the first two jobs the VE described; however, the court finds no conflict between the testimony of the VE and the DOT regarding the third job described by the VE.

According to the DOT, the job of equipment cleaner or vehicle cleaner (DOT occupational code 630.584-010[3]) has a Specific Vocational Preparation ("SVP") rating of 4[4].  An occupation is considered semiskilled if the SVP rating is a 3 or 4.  In this case, the ALJ determined that plaintiff had no transferrable work skills.  Tr. 22.  As a result, plaintiff is limited to unskilled work.  *See* SSR 83–10, 1983 WL 31251 at *3 (S.S.A. Jan. 1, 1983) ("Ability to perform skilled or semiskilled work depends on the presence of acquired skills which may be transferred to such work from past job experience above the unskilled level or the presence of recently completed education which allows for direct entry into skilled or semiskilled work. … Unskilled work may be performed by individuals with no work skills or not work experience.").

---

[3] The court notes that the VE did not reference the particular occupational code number for each job he listed.  For purposes of this opinion, we will use the occupational codes that plaintiff uses in his brief.

[4] The SVP level refers to the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a particular occupation. *See Dictionary of Occupational Titles,* app. C (rev. 4th ed.1991).  Unskilled work usually requires less than thirty days of training, which corresponds to an SVP level of 1 or 2; semi-skilled work corresponds to an SVP level of 3 or 4; and skilled work requires an SVP level of 5 or higher.  SSR 00-4p, 2000 WL 1898704 (S.S.A. Dec. 4, 2000).

Thus, while the VE testified that this position was unskilled, the DOT provides otherwise.  The second position identified by the VE was a hand packager (DOT occupational code 920.587-018).  The DOT classifies this job as a medium exertion level position while the VE testified that it was a light exertion level job.  Again, there is a conflict between the testimony of the VE and the DOT.  Since we conclude that certain conflicts exist concerning the skill level and exertional level identified by the VE and the DOT, the court must determine if substantial evidence otherwise supports the ALJ's determination that plaintiff was capable of performing other jobs in the national economy.

Plaintiff argues that he cannot perform the machine feeder job because the DOT lists its reasoning development level at 2.  Plaintiff maintains that since he only has an eighth grade education he is limited to "simple" unskilled jobs and that a reasoning development level of 2 would require a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations."  *See Dictionary of Occupational Titles,* app. C (rev. 4th ed.1991).

The court notes that neither the medical evidence nor the ALJ's opinion limits plaintiff to performing only "simple" jobs.  The evidence shows that Dr. Segura found that plaintiff was alert and oriented, not depressed or anxious, and able to communicate with no deficits.  He noted that his memory both remote and recent was intact and he maintained good insight and cognitive function.  Tr. 172.  He concluded that plaintiff would be able to "hold a conversation, respond appropriately to questions, and carry out and remember instructions."  Tr. 173.  Additionally, Dr. Levy concluded that plaintiff did not suffer from any medically determinable mental impairment.  Tr. 189.  Furthermore, while the ALJ found that plaintiff was limited to unskilled positions,

nowhere in her opinion does she limit him to simple jobs.  The court notes that plaintiff's counsel was given the opportunity to cross-examine the VE and he did not raise the issue of reasoning development or challenge the VE's testimony that plaintiff could perform the job of machine feeder.

Nothing in the record leads this court to believe that plaintiff could not "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations," the criteria for a reasoning development level of 2.  *See Dictionary of Occupational Titles, supra*. The VE testified that the position of machine feeder requires light exertion and is unskilled.  Tr. 49-50.  He further stated that there were 42,000 positions available nationally and 600 positions in Louisiana.  *Id.*  This testimony is in line with plaintiff's RFC and supports the ALJ's finding that plaintiff was capable of making an adjustment to other work that exists in significant numbers in the national economy.[5]  Thus, we find that the ALJ's conclusion that plaintiff could perform the machine feeder job is supported by substantial evidence.

Lastly, plaintiff contends that the ALJ erred by failing to question the VE about a possible conflict between his testimony and the DOT.

Social Security Ruling 00-4p provides that when a VE provides evidence of a job or occupation, the ALJ has a "responsibility to ask about any possible conflict between the VE … evidence and information provided in the DOT."  SSR 00-4p, 2000 WL 1898704 (S.S.A. Dec. 4, 2000).  If a conflict exists, the ALJ must "obtain a reasonable explanation for the apparent conflict" and explain in their decision how the conflict was resolved.  *Id.*

---

[5] *See, e.g. Ellis v. Astrue,* 2013 WL 595071 (U.S.D.C. W.D. La., Jan. 17, 2013), where the court found that substantial evidence supported the ALJ's finding that work existed in significant numbers when the VE testified that a surveillance system monitor position had 16,566 jobs nationally and 208 in Louisiana.

Here, the ALJ asked the VE at the outset of his testimony whether he was familiar with the Social Security Administration's various exertional (sedentary, light, medium and heavy) and skill (skilled, unskilled and semi-skilled) levels.  Tr. 45.  When he replied in the affirmative, the ALJ specifically asked, "[d]o you understand that if you give us an opinion which conflicts with the information contained in the Dictionary of Occupational Titles you need to advise me of such conflict and the basis for your opinion?"  Tr. 46.  Again, the VE advised that he understood and did not advise the ALJ of any conflicts.  Considering the response from the VE at the hearing, the ALJ had no basis upon which to elicit an explanation from the VE of any conflict.  Thus, we find that the ALJ properly followed SSR 00-4p.

Plaintiff has failed to show that the ALJ's decision was not supported by substantial evidence.

## CONCLUSION

Based on the foregoing, we find substantial evidence of record and relevant legal precedent support the ALJ's decision that plaintiff is not disabled.   It is therefore RECOMMENDED that the ALJ's decision be AFFIRMED and this matter be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court.  Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN**

**ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE this 31st day of July, 2014.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE